J-A07043-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| JOSEPH ORUSKA AND CYNTHIA ORUSKA, HUSBAND AND WIFE, AND ANTHONY ORUSKA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| PAUL A. KELLY AND JOHN L. VANDERMARK, EXECUTOR OF THE ESTATE OF GUY E. VANDERMARK, SR. | |
| APPEAL OF: PAUL A. KELLY | No. 1120 MDA 2013 |

Appeal from the Judgment Entered June 6, 2013
In the Court of Common Pleas of Susquehanna County
Civil Division at No: 2006-01754

BEFORE: GANTMAN, P.J. , DONOHUE, and STABILE, JJ.

MEMORANDUM BY STABILE, J.:                    **FILED DECEMBER 09, 2014**

Appellant Paul A. Kelly, Esq. appeals from the June 6, 2013 judgment entered by Court of Common Pleas of Susquehanna County (trial court) in favor of Appellees Joseph, Cynthia and Anthony Oruska.[1]  Upon review, we affirm.

---

[1] Appellant erroneously appealed from the trial court's June 11, 2013 order denying his post-trial motions.  It is settled that an appeal will only be permitted from a final order unless otherwise permitted by statute or rule of court. ***Maya v. Johnson & Johnson***, 297 A.3d 1203, 1208 n.2 (Pa. Super. 2014) (citation and quotation marks omitted).  In fact, an appeal from an order denying post-trial motions is interlocutory. ***Id.*** (citation omitted);
*(Footnote Continued Next Page)*

This panel previously summarized the procedural history:

> Briefly, Appellees filed a complaint against Appellant alleging wrongful use of civil proceedings and abuse of process. Following a jury trial, the jury returned a verdict in favor of Appellees. The jury also awarded punitive damages against Appellant. Appellant filed post-trial motions for judgment notwithstanding the verdict (JNOV) with respect to each count of the complaint and with regard to punitive damages. The trial court denied the motions. This appeal followed.

*Oruska v. Kelly*, No. 1120 MDA 2013, unpublished memorandum at 2 (Pa. Super. filed July 11, 2014). Following Appellant's filing of a Pa.R.A.P. 1925(b) statement of errors complained of on appeal, the trial court issued a Pa.R.A.P. 1925(a) opinion, concluding that it properly denied Appellant's post-trial JNOV motion.

On appeal,[2] although Appellant raises 17 arguments for our review, the thrust of his argument is that the evidence is "grossly insufficient" to

_(Footnote Continued)_ ————————

Pa.R.A.P. 301(a), (c), and (d). Here, however, the final judgment was entered on June 6, 2013, and we have corrected the caption accordingly.

[2] Our standard of review of a trial court's denial of a motion for JNOV is as follows:

> A JNOV can be entered upon two bases: (1) where the movant is entitled to judgment as a matter of law; and/or, (2) the evidence was such that no two reasonable minds could disagree that the verdict should have been rendered for the movant. When reviewing a trial court's denial of a motion for JNOV, we must consider all of the evidence admitted to decide if there was sufficient competent evidence to sustain the verdict. In so doing, we must also view this evidence in the light most favorable to the verdict winner, giving the victorious party the benefit of every reasonable inference arising from the evidence and rejecting all unfavorable testimony and inference. Concerning any questions of law, our scope of review is plenary. Concerning questions of credibility and weight accorded the evidence at trial, we will not substitute our judgment for that of the finder of fact. If any basis exists upon which the jury could have properly made its award, then we must affirm the trial

_(Footnote Continued Next Page)_

support Appellees' causes of action and award of punitive damages.[3] Appellant's Brief at 10. On July 11, 2014, we issued a memorandum decision, remanding the matter to the trial court because we were unable to engage in a meaningful appellate review of the issues raised. *Id.* at 3. Specifically, we reasoned that the trial court failed to set forth the relevant facts "pertaining to the wrongful use of civil proceedings and abuse of process causes of action, and the punitive damage award[.]" *Id.* at 6. Consistent with our July 11, 2014 memorandum decision, the trial court issued an amended Rule 1925(a) opinion on September 16, 2014.

After careful review of the parties' briefs, the record on appeal, and the relevant case law, we conclude that the amended 1925(a) opinion authored by the Honorable David J. Williamson adequately disposes of Appellant's issues on appeal. *See* Trial Court Opinion, 9/16/14, at 2-17. We, therefore, affirm the trial court's order denying Appellant's post-trial motion for JNOV. We direct that a copy of the trial court's September 16, 2014 Rule 1925(a) opinion be attached to any future filings in this case.

Judgment affirmed.

_(Footnote Continued)_ ————————

court's denial of the motion for JNOV. A JNOV should be entered only in a clear case.

*Am. Future Sys.*, *Inc. v. Better Bus. Bureau of E. Pa.*, 872 A.2d 1202, 1214-15 (Pa. Super. 2005) (citation omitted), *aff'd*, 923 A.2d 389 (Pa. 2007).

[3] Appellant essentially argues that Appellees are unable to point to any evidence of record to sustain the jury verdict.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>12/9/2014</u>

COURT OF COMMON PLEAS OF SUSQUEHANNA COUNTY
THIRTY-FOURTH JUDICIAL DISTRICT
COMMONWEALTH OF PENNSYLVANIA

| | |
|---|---|
| JOSEPH ORUSKA and | : NO. 2006 – 1754 C.P. |
| CYNTHIA ORUSKA, husband and wife, | : |
| and ANTHONY ORUSKA, | : |
| | : |
| Plaintiffs | : |
| | : |
| vs. | : |
| | : |
| PAUL A. KELLY and | : |
| JOHN L. VANDERMARK, Executor of the | : |
| ESTATE OF GUY E. VANDERMARK, SR., | : |
| | : |
| Defendants | : PA.R.A.P. 1925(a) |

**AMENDED STATEMENT PURSUANT
TO PA.R.A.P. 1925(a) UPON REMAND**

This matter has been remanded back to this Court to supplement the prior

statement pursuant to Pa. R.A.P. 1925(a), setting forth this Court's reasoning for denial of

Appellant's (Paul Kelly's) Motion for Judgment Notwithstanding the Verdict (JNOV).

Appellant's Motion for JNOV included the wrongful use of civil proceedings cause of action, the

abuse of process cause of action and punitive damage claim submitted to the jury. The Superior

Court has requested this Court issue an opinion identifying the trial evidence relied upon in

denying the Motion for JNOV as to those claims. We have supplemented and revised our initial

statement filed in this matter as follows:

149-17

This matter came before this Court following a jury trial. The jury returned a verdict in favor of the Oruskas and against the Appellant Paul A. Kelly (Appellant) for wrongful use of civil proceedings and abuse of process. The jury awarded compensatory damages and punitive damages. Appellant filed timely post-trial motions that were denied by this Court. A Notice of Appeal was filed and the Appellant has now filed a Concise Statement of Matters Complained of on Appeal. The Appellant raised (17) issues for review on Appeal.

The errors complained of by the Appellant can essentially be broken down to the following issue: This Court's failure to grant post-trial motions and judgment notwithstanding the verdict on four separate requests of the Appellant.[1] This Court did not grant Appellant's motion for judgment notwithstanding the verdict (JNOV) as to both counts of the suit; wrongful use of civil proceedings and abuse of process. Appellant also requested that the punitive damages awarded by the jury be set aside. Finally, the Appellant alleges the Court erred by denying the motion for judgment notwithstanding the verdict (JNOV) that requested imposition of a remitter of the award of $200,000 in punitive damages.

In support of his motion for post-trial relief for JNOV as to the jury's finding of wrongful use of civil proceedings, the Appellant states the Oruskas failed to meet their burden of proof. Specifically, the Appellant argues the Oruskas did not prove the Appellant acted without probable cause in filing civil proceedings as an attorney and on behalf of himself against the Oruskas. The Appellant claims in the alternative that the Oruskas failed to prove the Appellant acted in a grossly negligent manner. The Appellant next contends that the Oruskas failed to prove the proceedings were instituted for an improper or malicious purpose unrelated to securing an adjudication of the claims on which the proceedings were based. Finally, the Appellant

---

[1] Appellant also alleges this Court erred in not granting compulsory non-suit and directed verdict as to all counts.

2

alleges the Oruskas failed to prove the underlying action was an action terminated in favor of the Oruskas. This includes the Appellant's contention that the Oruskas did not prove the underlying action was terminated in favor of persons against whom they were brought as the result of some litigious action as defined by this Court in instructions to the jury.

As to wrongful use of civil proceedings, the relevant Statute states as follows:

> " A person who takes part in the procurement, initiation, or continuation of and proceedings against another is subject to liability to the other for wrongful use of civil proceedings:
>
> 1. He acts in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties, or adjudication of the claim in which the proceedings are based; and
>
> 2. The proceedings have terminated in favor of the person against whom they are brought."

42 Pa. C.S.A. §8351 (a)(1).

The facts set forth at trial included testimony regarding two underlying actions that led to a suit filed under the caption subject to this appeal (#2006 Civil 1754), and one under a caption not on appeal (#2007 Civil 229; also referred to herein as the "ejectment action"). In the ejectment action, Appellant filed suit on behalf of Guy Vandermark against the Oruskas, and it was ultimately settled and dismissed. (The parties agreed the Oruskas owned the land upon which the ejectment action was based.[2]) As a result, this Court granted Appellant's request for a non-suit as to the count of wrongful use of civil proceedings that pertained to that underlying case (#2007 Civil 229). The jury still found that Appellant had committed an abuse of process in

---

[2] The parties stipulated to the Oruskas owning the disputed land as part of the Oruskas' request for quiet title/declaratory relief brought by a separate claim, and summary judgment was entered in favor of the Oruskas on the ejectment count.

3

that case, but awarded $0 in damages. That matter, #2007 Civil 229, is not on appeal. The other suit filed by the Oruskas under this caption, #2006 Civil 1754, claimed that the Appellant acted improperly in a separate suit in which he was a Plaintiff and also the lawyer for other Co-Plaintiffs, against the Oruskas. Appellant and his other Co-Plaintiffs claimed the Oruskas committed various torts, including interference with contractual obligations. Appellant also made contract and quasi-contract claims. That suit was voluntarily discontinued by Appellant on his own behalf the day after the Plaintiff/Oruskas, as Defendants in that case, praeciped the matter for trial. The other Plaintiffs in that case (including Defendant in this matter, Estate of Guy Vandermark) had previously discontinued their claims in the action.

Notably, the facts showed Appellant had a lease prepared between himself and Guy Vandermark and between himself and the Oruskas for quarry rights on both the Vandermark and Oruska property. (N.T. 5/13/13 pp. 37-38 and 78-79; Plaintiff's Exh. 863-A; Plaintiff's Exh. 863-182; N.T. 5/15/13 pp. 55-56). The Vandermark and Oruska property bordered each other. (Plaintiff's Exh. 463D). Quarrying activities subsequently took place on both the Vandermark and Oruska properties at the common border of the two properties. The Oruskas later questioned the royalty payments they were receiving from Appellant under the Lease. (Plaintiff's Exh. 863-B). They believed Kelly was quarrying more from their property than they were being paid. (Id.) Appellant then filed an ejectment action against the Oruskas on behalf of Vandermark shortly thereafter. (Plaintiff's Exh. 863-1). That was the matter eventually settled by the parties that was the subject of claims in case #2007 Civil 229, which is not on appeal. The ejectment action claimed the Oruskas did not actually own the land upon which the quarry was located; rather Guy Vandermark owned the entire land upon which the quarry was located. Paul Kelly, who had

4

a lease with both Oruska and Vandermark to mine the quarry, filed the suit for Vandermark against Oruska. (Id.)

Appellant had also arranged for other partners or subcontractors, referred to in this suit as the "Quarrymen", to operate the quarry on lands of Vandermark and Oruska to remove stone. (N.T. 5/13/13 pp. 88-90; N.T. 5/14/13 pp. 120-123, 153-157, 175-177). Testimony of Joseph Oruska, Paul Kelly and the quarrymen (Joe Roberts, James Donahue and Ronald Degraw) showed the Oruskas and Appellant had further disagreements about their Lease and quarrying activity. Appellant then filed the separate underlying suit against the Oruskas, both on his behalf, and on behalf of the Quarrymen partners and Vandermark. (Plaintiff's Exh. 862-4). The suit was amended to add Joseph Oruska's brother, Anthony Oruska as a Defendant. (Plaintiff's Exh. 862-24). That suit was eventually voluntarily discontinued by the Quarrymen, and the Vandermark Estate.[3] (Plaintiff's Exh. 862-32; Plaintiff's Exh. 862-36). Appellant eventually discontinued the suit on his own behalf, but only after the Oruskas filed a praecipe to list the matter for trial. The actions in that suit gave rise to the Oruskas' claims for wrongful use of civil proceedings, abuse of process, and punitive damages in this matter, now the subject of the appeal.

There were enough facts for the matter to go to a jury to consider wrongful use of civil proceedings. In reviewing all of the facts as a whole, a jury could have found the Defendant acted in a grossly negligent manner, or without probable cause and primarily for a purpose other than securing proper discovery or adjudication of the claims in the proceedings. Although the existence of probable cause is a question of law, the statute contains three different factual proof

---

[3] Guy Vandermark died during the proceedings on February 14, 2006, and his Estate, by his Executor John Vandermark, was substituted as the correct party. (Plaintiff's Exh. 863-134).

5

standards, such that a jury has to decide whether or not these facts have been proven. Bannar v. Miller, 701 A.2d 232 (Pa. Super. 1997). Probable cause exists if a person who takes part in civil proceedings reasonably believes in the existence of the facts upon which the claim is based and either:

> (1) Reasonably believes that under those facts the claim may be valid under the existing or developing law;
> (2) Believes to this effect in reliance upon the advice of counsel, sought in good faith and given after full disclosure of all relevant facts within his knowledge and information; or
> (3) Believes as an attorney of record, in good faith that his procurement, initiation or continuation of a civil cause is not intended to merely harass or maliciously injure the opposite party.

42 Pa. C.S.A. §8352.

An attorney acts without probable cause on behalf of clients when he so acts with the belief the claim will not succeed, but continues it anyway for an improper purpose. Kelly-Springfield Tire Co. v. D'Ambro, 596 A.2d 867 (Pa. Super. 1991). Absent material conflicts in evidence, the presence of probable cause is for a Court to determine. Meiksin v. Howard Hanna Co., Inc., 590 A.2d 1303 (Pa. Super. 1991). But, the objective reasonableness of the belief in probable cause is a credibility issue for a jury to determine. Bannar, supra. Here, there were various factual issues. Many of the factual issues rested on the credibility of witnesses.

The facts for a jury to weigh consisted of the following: Oruska had a business relationship with Appellant Kelly as previously cited herein. This business relationship allowed Kelly to quarry and remove stone from Oruska's land in exchange for royalties based upon a percentage of monies received when the stone was sold. (Plaintiff's Exhibit 863-A-Quarry Lease). Kelly was a practicing attorney at the time. (N.T. 5/14/13 pp. 190-191). Kelly also entered into a business relationship with Guy Vandermark. (N.T. 5/13/13 pp. 37-38, 78-79; N.T.

5/15/13 pp. 55-56). Kelly had represented Guy Vandermark since at least 1972, as one of his first clients. (N.T. 5/14/13 pp. 219; 191). Kelly had both leases prepared by his partner/brother Lawrence Kelly (N.T. 5/14/13 pp. 207; 221-222). Kelly testified that there may have been a small quarry on Vandermark's land first. (Id. At pp. 207-208). Kelly believed the quarry he operated expanded from Oruska's land to Vandermark's land. (Id. pp. 208-209).

Joseph Oruska believed Kelly was not accounting properly for all of the stone removed from his property. (Plaintiff's Exhibit 863-A; N.T. 5/13/13 pp. 124; N.T. 5/14/13 pp. 209-210). Oruska believed this persistence in questioning Kelly about royalties was the ultimate reason Kelly filed the ejectment suit on behalf of Vandermark, and the claims filed on behalf of the quarrymen, Vandermark, and Kelly himself, as retaliation. These suits were filed by Kelly soon after Oruska, through his attorney, gave notice of termination of the Lease Agreement on September 7, 2004. (Plaintiff's Exh. 863-B).

Cynthia Oruska testified that during the term of the Lease with Paul Kelly, and prior to the Oruskas terminating the Lease, Paul Kelly brought her a check for royalties. The back of that check had typed on it a statement that by endorsing the check, the quarry lease would be extended for an additional ten years. (N.T. 5/13/13 pp. 123-124).

The original Lease Agreement presented by Paul Kelly to the Oruskas for the quarry called for a ten year term on ten acres of land. Joseph Oruska crossed that out and inserted five years and five acres. (Id. pp. 79; Plaintiff's Exhibit 863-A-Quarry Lease). Therefore, the check for royalties presented by Kelly to Cynthia Oruska, purported to change the terms of the lease if endorsed.

Cynthia Oruska further testified that Paul Kelly came to see her at the office she worked in at the time in the Susquehanna County Courthouse while the Lease was still in effect.

7

She stated that Paul Kelly told her that "if my husband didn't stop asking questions about the accounting, that this was going to get ugly." (N.T. 5/13/13 pp. 124). This was prior to the Oruskas giving notice of termination of the Lease, and prior to the lawsuits filed by Kelly.

There was also evidence introduced regarding the ejectment action filed by Kelly on behalf of Vandermark against Oruska. The matter eventually was settled by stipulation, recognizing ownership of the disputed lands as belonging to Oruska. As the matter ended by a settlement, the wrongful use of civil process claim was dismissed by this Court as to that action. However, we note in that matter, Kelly filed a deed on behalf of Vandermark, claiming Vandermark owned 16 acres of land believed to be owned by Oruska. This deed was filed after Oruska terminated the Lease with Kelly. (Plaintiff's Exh. 863-57 – attachment; N.T. 5/13/13 37-38). Kelly later filed a deed in which he and his wife were Grantors and Cynthia Oruska Grantee, purporting to quit claim any interest Guy Vandermark had in the 16 acre parcel, but stated it in no way affected the quarry lease of Oruskas and Paul Kelly. (Plaintiff's Exh. 863-126-4 & Exh. 863-C)[4]. This deed was recorded 1/31/2006. (Id.) The deed was ultimately set aside and declared a nullity by the Court. (Plaintiff's Exh. 863-145). Prior to settlement of the ejectment action, Paul Kelly was removed as counsel for Vandermark due to a conflict of interest. (N.T. 5/15/13 pp. 75-76). However, he still filed the quit claim deed thereafter purporting to declare Guy Vandermark had no interest in the disputed 16 acre parcel.

The tort claim and breach of contract case continued. Roberts, Donahue and Degraw, (the "quarrymen"), voluntarily discontinued the matter as to them in October 2005. (N.T. 5/14/13 pp. 146; 161; 182-183; Plaintiff's Exh. 862-32 recorded April 4, 2005). The Vandermark Estate filed a discontinuance June 5, 2006. (Plaintiff's Exh. 862-36). The

---

[4] We note this was shortly before the Vandermark Estate and Oruskas settled the ejectment action and agreed the Oruskas owned the disputed land and prior to Kelly discontinuing his own action against the Oruskas for breach of contract regarding the Quarry Lease.

quarrymen all signed affidavits in October 2007 regarding the reasons for their suit that were prepared by Paul Kelly. (Def. Kelly Exh. 36, 37, 38; N.T. 5/14/13 pp. 145; 158; 171-172). The discontinuances were also prepared by Paul Kelly (Plaintiff's Exh. 862-32 and 862-36). On June 5, 2006, the attorney for the Oruskas placed the case on the trial list. (N.T. 5/15/13 p. 64). Paul Kelly filed a discontinuance on behalf of himself as Plaintiff the next day. (Id. P. 65). No discovery was taken and the matter never proceeded to trial. (Id. At 66).

After the filing of the tort claim and breach of contract case against the Oruskas, Paul Kelly was directed by the Court to file an amended pleading clarifying that the Amended Complaint previously filed in the matter was filed solely on behalf of Kelly representing himself, and not on behalf of the other Plaintiffs. (Defendants' Vandermarks Exh. 862-23). Putting all of these facts together, Oruska claimed probable cause existed that the suit was brought by Paul Kelly on his own behalf, and/or on behalf of his clients, in bad faith and for improper reasons. The reason being retaliation for questioning the accounting and terminating the Quarry Lease with Paul Kelly. It could be inferred from this testimony that the Oruskas believed Paul Kelly acted with malice to cause harm to the Oruskas. Viewing these facts in the light most favorable to the Oruskas, as the prevailing party, a jury could find probable cause existed.

The testimony of the quarrymen and Paul Kelly was that Joseph Oruska engaged in some, or all of the tortious conduct complained of in the lawsuit filed against the Oruskas. There was no testimony that Cynthia Oruska engaged in any threats or vandalism. There was only Paul Kelly's testimony that Cynthia Oruska, together with Joseph Oruska, terminated the Quarry Lease. This was the only testimony in support of the Breach of Contract claim asserted against Cynthia Oruska, and the only claim that pertained to her in the underlying suit at No. 862-2004, listing Degraw, Donahue, Roberts, Vandermark and Paul Kelly as Plaintiffs. The

9

issue of whether or not suit was brought by Paul Kelly, on his own behalf, against Cynthia Oruska for breach of contract (which would be a reasonable basis for the suit since the Quarry Lease was terminated) as he claimed, or for the mere purpose to harass Cynthia Oruska, was a question of credibility for the jury to decide.

Likewise, the testimony of the quarrymen and Paul Kelly as to the reasons for filing their lawsuit as to Joseph Oruska was an issue of credibility to be weighed against the testimony of Joseph and Cynthia Oruska. A jury could choose to believe the testimony of the Oruskas, and based on that testimony, together with the Exhibits and other testimony they found to be credible, find that Paul Kelly initiated the litigation, at least as to his own claims, in bad faith and with intent to harass the Oruskas for questioning the accountings and/or terminating the Lease. As Cynthia Oruska stated, Paul Kelly told her, prior to termination of the Quarry Lease and the resulting litigation filed by and/or on behalf of himself, that if Joseph Oruska did not stop asking questions about the accounting, it was "going to get ugly." (N.T. 5/13/13 p. 124). The jury could choose to believe this testimony, as the reason Paul Kelly filed suit, at the very least, for his own claims made, and not for a legitimate or good faith reason. The jury could choose not to believe Kelly's testimony. It appeared to be an issue for the jury to decide as it hinged on the credibility and determination of disputed facts.

The jury could have found the quarrymen credible, or not, and still found Kelly acted without probable cause and with the intent to harass or with malice. Even if the jury found the quarrymen, and Kelly, filed suit for the tortious conduct in good faith on behalf of the quarrymen, the jury could find Kelly not credible in his testimony regarding filing suit for his own personal claims. The quarrymen and the Vandermark Estate ultimately discontinued the suit prior to Kelly doing the same. Their claims were separate from the claims of Kelly.

10

Therefore, even if there was undisputed evidence of conduct giving rise to the quarrymen and Vandermark claims, granting probable cause, the personal claims of Kelly himself are separate and distinct. By filing counts on behalf of himself, Kelly holds himself out as more than just the attorney for the parties; he was a party participant as well. Therefore, the credibility of Kelly as to his intent, at least with regard to his own claims in the lawsuit, was an issue in dispute with the Oruska testimony.

Putting all of the previously discussed trial evidence together with Cynthia Oruska's testimony that Paul Kelly advised it "was going to get ugly," supported a finding that Appellant Paul Kelly acted without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of a claim. We concede there is no smoking gun, per se, where there is clear evidence of an attorney bringing suit when there is no argument that under the law recovery is impossible. However, there still has to be justification for the action taken. Whether or not the testimony concerning the justification is credible or not would appear to be a question for the jury under Meiksin and Bannar supra.

The facts were also sufficient that a jury could find the underlying proceedings terminated in favor of the Oruskas. A prior favorable termination need not be an adjudication on the merits; it can occur as the result of a voluntary dismissal of the underlying proceeding or an abandonment of the proceedings. DiLorento v. Costigan, 600 F. Supp. 2d 671 (E.D. Pa. 2009), affirmed 351 Fed. App. 747, 2009 WL 3683784. Therefore, this was a proper factual determination for the jury to consider. There were also issues of fact and credibility of witnesses for the jury to weigh as to the motivation for the voluntary dismissal. These issues included: the timing of the discontinuance by Kelly of his claims the day after the matter was placed on a trial list in 2006; the quarryman discontinuing their claims in 2005; the Vandermark Estate

11

discontinuing all claims after the death of Guy Vandermark and resolution of the disputed land case by Stipulation in favor of the Oruskas; the fact no discovery took place; and the fact no settlement or agreement was reached between Oruska and Kelly (or the quarrymen). As such, the jury could find facts sufficient to find the matter terminated in favor of the Oruskas.

Appellant also contends the Oruskas failed to meet their burden of proving abuse of process. An action for abuse of process requires a showing of the improper use of process after it has been issued. Publix Drug Co. v. Breyer Ice Cream Co., 32 A.2d 413 (Pa. 1943). The lack of probable cause is not necessary to prove abuse of process. Murphy v. Shipley, 41 A.2d 671 (Pa. 1945).

Here, the Oruskas contended that Appellant, in both underlying actions, continued the suits for an improper purpose. In both instances, the Oruskas alleged the matters were continued by Appellant after filing, and that further Court hearings were necessary, even though the Oruskas contended the suits lacked merit. The Oruskas alleged the Appellant was retaliating against them, over the Quarry Lease. The Oruskas contended that the Appellant continued the suit while lacking proof of events or legal theories. This also included the Appellant continuing his underlying suit, causing the Oruskas to incur attorney's fees, even after the other underlying action for ejectment concerning the property line and extent of the quarry boundaries on the Oruska property was resolved and after the quarrymen discontinued their suit. The facts and credibility of witnesses was an issue for a jury to decide why the underlying suit was continued under the circumstances.

The underlying suit was filed after the Oruskas terminated the Quarry Lease. The relevant testimony in support of the Oruskas' claim for abuse of process was Cynthia Oruska's testimony about Paul Kelly's statements prior to filing. That statement being that it "was going

12

to get ugly". The suit continued through Amendments to the Complaint (resulting in the Fourth Amended Complaint) following preliminary objections. The suit continued after Paul Kelly was admonished to file an amended pleading clarifying that the Amended Complaint filed January 25, 2005 was filed solely on behalf of Kelly and not on behalf of the other Plaintiffs.

The suit claiming breach of contract on the Quarry Lease continued after Paul Kelly prepared and filed a deed (attached to Plaintiff's Exh. 863-57) from Guy Vandermark to Guy Vandermark on October 27, 2004 claiming to own 16 acres purportedly owned by the Oruskas that was in dispute in the ejectment case, which eventually settled in favor of the Oruskas. Appellant was claiming a breach of contract by terminating the Lease at the same time he was asserting on behalf of Vandermark that the Oruskas did not ever own the land on which the quarry was located.

The case continued after Paul Kelly recorded a deed on January 31, 2006 from Paul Kelly and Pamela Kelly purporting to quit claim any interest of Guy Vandermark in the disputed 16 acre parcel. (Plaintiff's Exh. 863-C). Said deed had no purpose, "other than the acknowledgment of Mr. Vandermark not being the owner of said 16 acre parcel. This deed in no way affects the Quarry Lease between the Oruskas and Paul A. Kelly." (Id.). By Court Order dated June 6, 2006, the Court in case No. 863-2004 (ejectment case – Vandermark v. Oruska), concluded that the parties had settled their boundary line dispute, and that the deed prepared and filed by Kelly (and Plaintiff's Exh. 863-C herein) conveyed no cognizable interest and was therefore a nullity, making it void and without legal effect. (Plaintiff's Exh. 863-145).

The suit continued after the quarrymen filed a discontinuance as to their claims in 2005. The suit continued after the Vandermark Estate filed a discontinuance in 2006. The Oruskas claimed the reason for the suit was retaliation, supported by Kelly's initial statement to

13

Cynthia Oruska, and the facts of record cited herein. These facts could give rise to a conclusion by the jury that Appellant aimed the suit at an objective that was not legitimate: the harassment of the Oruskas. Again, there was not much evidence, but enough for a jury, based upon the above facts, to weigh credibility and find as it did.

Appellant next contends this Court erred in allowing the jury to consider punitive damages and that their motion for JNOV should have been granted. The Appellant alleges the Oruskas failed to prove the Appellant acted outrageously under the circumstances. The testimony regarding the Appellant's actions are set forth on the record and discussed in part herein.

This testimony included the fact that Paul Kelly entered into a lease between himself and the Oruskas to establish a quarry on the land. Kelly entered into a similar lease with Vandermark. Kelly had represented Vandermark for thirty years at that point. Joseph Oruska began to disagree with Kelly over payment of royalties and the accounting for stone removed from his land and Vandermark's land. Kelly submitted a check for royalties to Cynthia Oruska on which a clause required an extension of the lease for ten years upon endorsement of the check. Kelly told Cynthia Oruska that if her husband did not stop questioning the accounting, it "was going to get ugly."

The testimony also included the Quarry Lease being terminated by the Oruskas in September 2004 due to failure of accounting and other reasons. Kelly then filed an ejectment action on behalf of Vandermark claiming the Oruskas did not own the land upon which the Quarry Lease with Kelly existed. Kelly then prepared and filed a deed from Vandermark to Vandermark, purporting to own the 16 acres of the Oruskas' land subject to the ejectment action. Kelly was ordered by the Court to end representation of Vandermark in the ejectment action due

14

to a conflict of interest. Kelly filed suit on his own behalf, and on behalf of the quarrymen and Vandermark for money damages against the Oruskas. Kelly was then ordered to file a pleading indicating he only represented himself in that action. Eventually, the ejectment case was dismissed and the parties stipulated to the Oruskas owning the 16 acres on which a portion of the quarry existed.

The quarrymen discontinued their suit in 2005. The Vandermark Estate discontinued the money damage case when the ejectment action was settled. Kelly discontinued his personal claims the day after the matter was listed for trial by counsel for the Oruskas. Kelly prepared and filed a deed prior to discontinuing his suit against the Oruskas, and after he was ordered to no longer represent Vandermark in the ejectment action. The deed was declared to be nullity of no legal effect, and purportedly cancelled Vandermark's ownership claim of the 16 acre parcel. The deed listed Paul Kelly and his wife as Grantors and Cynthia Oruska as Grantee. The deed further claimed it had no effect on the Quarry Lease with the Oruskas. The deed was filed January 31, 2006. Paul Kelly testified he was an attorney since 1972 and 95% of his practice consisted of real estate. (N.T. 5/14/13 p. 191).

All of these facts, when taken together, and if found credible by the jury, can show outrageous conduct under the circumstances. There is overlap among the facts of the two suits filed by Kelly against the Oruskas, and taken as a whole, can support the claim for outrageous behavior. This is especially so given Kelly's personal involvement with the Lease Agreements; his long standing representation of Vandermark; his personal financial interest in a quarry located on both lands; his alleged comments to Cynthia Oruska; his knowledge and experience as a real estate attorney, yet filing the deed for Vandermark and the invalid quit-claim deed from himself to Cynthia Oruska; his filing an ejectment action for a client and subsequently

15

his own breach of contract claim against the Oruskas, with whom he was leasing the very land in the ejectment dispute; and engaging in litigation ultimately discontinued as soon as it was listed for trial. Therefore, we denied the Post-Trial Motions.

Finally, Appellant alleges the Court erred in denying the post-trial motion for JNOV with regard to the amount of the punitive damage award of $200,000. The Appellant states the award was excessive under the facts of the case, that it shocks the sense of justice so as to suggest that the jury was influenced by partiality, prejudice, mistake or corruption, and it was a violation of the Appellant's rights under the United States Constitution and the Commonwealth of Pennsylvania.

We cannot say that an award of $200,000 in punitive damages in this case is excessive. The Oruskas alleged they were threatened and intimidated by the Appellant once they questioned the royalties the Appellant was paying them. Eventually, quarry activities and royalties ceased. The Oruskas alleged that after they sought legal counsel, and terminated the lease, the Appellant filed the ejectment action. The Oruskas incurred attorneys fees to defend two separate lawsuits filed by the Appellant, in which there appeared to be a conflict of interest by the Appellant. The litigious conduct only stopped after the Plaintiff/Oruskas praeciped the underlying suit for trial on the merits. The Oruskas also testified to comments and actions of the Appellant that they found to be threatening and intimidating. There was nothing to indicate the jury award was excessive, nor should the Court disturb the jury's award in this matter.

The Appellant also claims the jury award shocks the sense of justice and/or the jury was influenced by partiality, prejudice, mistake or corruption. We cannot say that under these facts that the jury's award shocks the sense of justice. Furthermore, there was no

16

suggestion or showing that the jury was influenced by partiality, prejudice, mistake or corruption.

Appellant's claim that the award is a violation of his rights is also not supported by the record. For these reasons, we denied the Appellant's Motion for JNOV.

BY THE COURT:

DAVID J. WILLIAMSON, J.
Specially Presiding
Monroe County Courthouse
Stroudsburg, PA 18360

Dated: September 15, 2014

cc:    Charles M. Watkins, Esquire
Laurence M. Kelly, Esquire
Michael Briechle, Esquire
Susquehanna County Court Administrator